# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Joseph Young, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>XG Security Services, LLC,<br><br>Defendant. | Case No.: |

# COLLECTIVE ACTION COMPLAINT

Plaintiff Joseph Young ("Plaintiff") individually and on behalf of all others similarly situated, by and through his attorneys, for his Collective Action Complaint against XG Security Services, LLC ("Defendant"), states as follows:

## NATURE OF CLAIMS

1. This case is about Defendant's failure to pay its employees properly for the overtime hours they worked, in accordance with federal law. Plaintiff and the similarly situated employees worked for Defendant as field technicians, performing field work on the equipment of Defendant's customers nationwide.

2. Plaintiff brings claims for overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") for Defendant's failure to pay him, and those similarly situated, overtime wages.

3. Plaintiff also brings a breach of contract claim against Defendant for its failure to reimburse him for costs he incurred when driving his personal vehicle to perform work for Defendant.

4. This is also an action by Plaintiff for retaliation, including termination, in violation of the FLSA, section 215(a)(3). Upon information and belief, Defendant terminated Plaintiff in response to Plaintiff's questioning and complaints to Defendant regarding its unlawful pay practices and failure to pay him all wages he is owed.

5. Plaintiff and those similarly situated customarily and regularly worked for Defendant in excess of forty (40) hours per week. Defendant knowingly required Plaintiff and similarly situated employees to work overtime hours, but failed to pay them at the legally-required overtime rate of pay for all of their overtime hours.

6. Plaintiff's consent form to join this action is attached as Exhibit A. In addition, to date, four other Plaintiffs have also consented to bring overtime claims against Defendant by filing their consent forms with this Court, attached as Exhibit B. As this case proceeds, it is likely that other individuals will also sign consent forms and join this action as opt-in plaintiffs.

## THE PARTIES

7. Plaintiff is a resident of Louisiana and worked for Defendant as a field technician from approximately January 30, 2017 to March 20, 2017. Defendant hired him out of its office in Elmwood, Louisiana. Plaintiff Young worked in Louisiana, Florida, Mississippi, Alabama, and in other states in the southern and southeastern United States, as assigned by Defendant. Plaintiff was Defendant's "employee" as defined by the FLSA, 29 U.S.C. § 203(e)(1).

8. Defendant XG Security Services, LLC, which is currently referred to as XG Technology Services after rebranding in 2016, provides companies with managed services, security, and QSR (Quick-Serve Restaurant) solutions. Defendant provides cloud storage, security and network infrastructures, QSR helpdesk services, and software development.

Defendant's principal office is located in Taylor, Michigan and it maintains offices in eight additional states throughout the United States, including Louisiana.

## JURISDICTION AND VENUE

9. This action arises under the FLSA, 29 U.S.C. § 201 *et seq.* The Court has original jurisdiction to hear this complaint and to adjudicate the claims stated herein pursuant to 28 U.S.C. § 1331.

10. This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's breach of contract claim, as this claim and his federal claims derive from a common nucleus of operative fact.

11. Venue is proper in the United States District Court, Eastern District of Louisiana, pursuant to 28 U.S.C. § 1391, because Defendant regularly conducts business within this judicial district and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS

14. Plaintiff and those similarly situated allege and incorporate by reference the allegations in the preceding paragraphs.

15. During the statutory period, Plaintiff and similarly situated individuals worked for Defendant as field technicians. Defendant employs field technicians to provide field support to its customers throughout the United States. Plaintiff's job duties included troubleshooting, installation, repairs, maintenance, and other related duties, typically in conjunction with Point of Sales systems and other equipment in quick-serve (fast food) restaurants.

16. Defendant required Plaintiff and similarly situated individuals to perform work that required them to exceed forty (40) hours per week. Defendant required field technicians to

3

travel to work sites to perform work on assigned jobs, which often required Plaintiff to travel significant distances (Plaintiff estimates that Defendant required him to drive approximately 1,500 to 2,000 miles per week on average). Plaintiff and those similarly situated routinely reported to the office to get tools and parts before their first job, and traveled to multiple job sites during each day.

17. While Plaintiff's schedule typically allowed him to return to his home at the end of each work day, other technicians were often required to remain on the road, away from home, for consecutive days and/or weeks at a time.

18. Defendant required Plaintiff and similarly situated individuals to work long hours. Plaintiff typically started his work days at approximately 7 a.m. and worked until at least 6 p.m. (often times much later into the evening).

19. Defendant was aware, or should have been aware, that Plaintiff and those similarly situated performed work that required them to work overtime. Defendant provided Plaintiff's and the similarly situated field technicians' work schedules and assignments. In addition, Defendant required them to report their work hours electronically via weekly timesheets, which routinely reflected overtime hours.

20. Even though Defendant required Plaintiff and those similarly situated to work overtime hours, Defendant did not pay them properly for all of the hours they worked over forty (40) per week. The FLSA, 29 U.S.C. § 207, requires employers to pay non-exempt employees one and one-half times their regular rate of pay for all hours worked over forty (40) per workweek.

21. Defendant classified Plaintiff as an hourly non-exempt employee, yet did not pay him one and one-half times his regular hourly rate of pay for all of the overtime hours he

4

worked. Instead, Defendant only paid Plaintiff straight time (his regular hourly rate) for many of his overtime hours.

22. By way of example, in the pay period starting February 12, 2017 and ending February 18, 2017, Plaintiff worked a total of sixty two (62) hours, twenty two (22) of which were overtime hours. Defendant paid Plaintiff at his straight time rate of $14 per hour for the overtime hours, rather than paying him at the required overtime rate of one and on-half times his regular rate of pay for those overtime hours.

23. Defendant was further aware that it was not compensating Plaintiff and the similarly situated individuals properly for overtime because Plaintiff complained to management about it. Specifically, when Plaintiff complained to Bernard Yoscovits, Defendant's owner, about the fact that he had not received overtime pay for hours worked over 40 per week, Bernard Yoscovits informed him that all of his travel time was only paid at straight time. Defendant routinely failed to include Plaintiff's travel time into the total number of hours he worked each week, for purposes of calculating overtime pay.

24. In addition, at times, Defendant required more than one technician to travel to assigned worksites in the same vehicle. Defendant maintains a practice in which it does not compensate each technician traveling in the vehicle for the total amount of time they spend traveling. Rather, Defendant only allows the driver of the vehicle to record his time in Defendant's timekeeping system. Time technicians spend riding as a passenger in a vehicle is not compensated.

25. These practices violate the provisions of the FLSA, 29 U.S.C. § 201 *et seq.*, and as a result of these unlawful practices, Plaintiff and those similarly situated have suffered a loss of wages.

26. In addition, Defendant's conduct was a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

## FACTS RELATED TO PLAINTIFF'S RETALIATION CLAIM

27. Defendant employed Plaintiff from January 30, 2017 to March 20, 2017.

28. Throughout his employment with Defendant, Plaintiff worked extensive overtime hours and drove significant distances to complete the work Defendant assigned to him.

29. On March 1, 2017, after Plaintiff noticed on one of his paystubs that he was paid straight time for overtime hours worked, he questioned the individual responsible for handling payroll for Defendant about why he was paid straight time for the overtime he had worked, rather than time-and-a-half. Plaintiff also inquired to her about outstanding mileage reimbursements that he yet to receive from Defendant.

30. The individual with whom Plaintiff spoke, instructed him to speak with Defendant's owner, Bernard Yoscovits, about these issues. Plaintiff had an in-person meeting with Bernard Yoscovits, who acknowledged that Defendant owed him compensation for unreimbursed mileage. He also acknowledged that the one reimbursement payment Defendant issued to Plaintiff was at the incorrect reimbursement rate (confirming that Plaintiff was reimbursed at 19 cents per mile, and should have been reimbursed at 54.8 cents per mile).

31. On March 11, 2017, Plaintiff complained to John Bourg, one of Plaintiff's managers, that he still had not received outstanding reimbursement payments. Mr. Bourg informed Plaintiff that he would take care of it.

32. On March 17, 2017, Plaintiff complained again to Abe Yoscovits, Defendant's operations manager, that he had not yet received a reimbursement payment for several weeks' worth of mileage expenses. Plaintiff stated again that he had only received one mileage

reimbursement to date, and that Defendant still owed him for all other outstanding reimbursements.

33. Plaintiff continued to have ongoing communications with the individual responsible for handling Defendant's payroll, about both the mileage reimbursement and unpaid overtime issues. Abe Yoscovits informed Plaintiff that he would receive a reimbursement for 4,000 miles on his next paycheck.

34. On March 20, 2017, when Plaintiff arrived to work, without any prior mention of termination or indication that Defendant was not satisfied with his work, Defendant issued Plaintiff a termination notice. In the termination notice, Defendant indicated that it no longer needed his services because of his "tardiness." Prior to receiving the notice, Defendant had not indicated or communicated any concerns to Plaintiff related to tardiness. Furthermore, Defendant indicated in the termination notice, that Plaintiff was taking too much time to complete his work. Defendant had not previously expressed to Plaintiff that the timeliness of his work was unsatisfactory. In fact, management had indicated to Plaintiff on multiple occasions that he was doing "great work."

35. Plaintiff's termination was retaliatory, and was directly tied to Plaintiff's questions and complaints about compensation Defendant owed him. As a result of Defendant's illegal conduct, Plaintiff suffered damages, including loss of income.

## COLLECTIVE ACTION ALLEGATIONS

36. Plaintiff and those similarly situated allege and incorporate by reference the allegations in the preceding paragraphs.

37. Plaintiff and the similarly situated individuals worked for Defendant as field technicians. They all performed similar work, which included troubleshooting, installation,

repairs, maintenance, and other related duties, typically in conjunction with Point of Sales systems and other equipment, in quick-serve (fast food) restaurants. They are also similar because they were not paid the required overtime premium of one-and-one-half times their regular rate of pay for hours they worked over 40 per week.

38. Plaintiff, along with four additional opt-in Plaintiffs, has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b). As this case proceeds, it is likely that other individuals will sign consent forms and join as opt-in plaintiffs.

39. Plaintiff seeks to have certified a collective action consisting of the following:

> All persons Defendant employed as field technicians, or in other similar positions, who were paid straight time for overtime hours they worked during the three year statute of limitations ("the FLSA Collective").

40. Plaintiff and the FLSA Collective are victims of Defendant's widespread, repeated, systematic and consistent illegal policies that have resulted in violations of their rights under the FLSA, 29 U.S.C. § 201 *et seq.* and have caused significant damage to them.

41. Defendant is aware that Plaintiff and those similarly situated work(ed) under these conditions, and yet Defendant still denied them the legally-required overtime compensation.

42. Defendant's conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.

43. Defendant is liable under the FLSA for failing to properly compensate Plaintiff and those similarly situated.

44. Notice of this action should be sent to the FLSA Collective. There are numerous similarly situated current and former employees of Defendant who have been denied appropriate compensation in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join. Those similarly situated

employees are known to Defendant and are readily identifiable through Defendant's records.

## COUNT I
### Violation of the FLSA
### (On Behalf of Plaintiff and the FLSA Collective)

45. Plaintiff and those similarly situated allege and incorporate by reference the allegations in the preceding paragraphs.

46. The FLSA, 29 U.S.C. § 207, requires employers to pay all non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) per workweek.

47. Plaintiff and those similarly situated are employees within the meaning of 29 U.S.C. § 203(e) and entitled to FLSA overtime compensation for all hours worked in excess of forty (40).

48. Defendant was an employer of Plaintiff and those similarly situated within the meaning of 29 U.S.C. § 203(d), and was an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s).

49. Plaintiff and those similarly situated routinely work(ed) in excess of forty (40) hours per week, but did not receive the appropriate overtime compensation from Defendant for their overtime hours.

50. In denying overtime compensation, Defendant violated the FLSA.

51. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

52. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and those similarly situated have suffered and will continue to suffer a loss of income and other damages. Plaintiff and those similarly situated are entitled to liquidated damages and attorneys' fees and costs incurred in connection with this claim.

53. Defendant knew or showed reckless disregard for the fact that it failed to pay these individuals for overtime hours worked.

## COUNT II
### Breach of Contract
### (On Behalf of Plaintiff)

54. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

55. Defendant entered into a valid contract with Plaintiff.

56. The contract provides that employees who do not use Defendant's fuel card will be reimbursed for mileage at a rate of 54.8 cents per mile. Plaintiff used his personal vehicle and paid cash for his fuel; therefore, Plaintiff is entitled to mileage reimbursement at 54.8 cents per mile.

57. Defendant failed to honor this contract by denying Plaintiff all of the mileage reimbursement he is owed. Defendant instructed Plaintiff to track and submit the total number of miles he drove each week, and informed him that it would reimburse him weekly. Plaintiff submitted his weekly mileage totals to Defendant; however Defendant failed to reimburse Plaintiff in all workweeks but one, during his employment with Defendant. In the one workweek that Defendant did reimburse Plaintiff for mileage, it reimbursed him at a rate of 19 cents per mile, rather than at 54.8 cents per mile (as required by the contract).

58. By denying Plaintiff the mileage reimbursement owed pursuant to the terms of this contract, Defendant breached the contract.

59. Defendant's actions were willful and the product of bad faith and not the result of a mistake or inadvertence.

60. As a direct result of Defendant's unlawful conduct, Plaintiff has suffered a

significant loss of income.

62. Plaintiff is entitled to recover damages for the unpaid mileage reimbursements owed under the contract and for other appropriate relief as the Court deems just and proper.

**COUNT III**
**Violation of the FLSA – Retaliation**
**(On Behalf of Plaintiff)**

62. Plaintiff restates incorporates by reference the above paragraphs as if fully set forth herein.

63. Section 215(a)(3) of the FLSA makes it unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA] . . . ."

64. Plaintiff was an employee of Defendant within the meaning of 29 U.S.C. § 201 *et seq*.

65. Defendant is an employer within the meaning of 29 U.S.C. § 201 *et seq*.

66. Plaintiff engaged in protected activity within the meaning of the FLSA by complaining to Defendant about wages owed to him under the FLSA.

67. Plaintiff suffered adverse action, including termination, after Defendant learned of Plaintiff's protected activity.

68. Defendant retaliated against Plaintiff in violation of the FLSA, 29 U.S.C. § 215(a)(3), because Plaintiff questioned and complained to Defendant about compensation it owed him.

69. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer a loss of income and benefits, emotional distress, and other

damages. Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to all "such legal or equitable relief as may be appropriate to effectuate the purposes of § 215(a)(3)", including liquidated damages, compensatory damages, and punitive damages, as well as attorneys' fees and costs incurred in connection with this claim.

70. Defendant's actions were knowingly, willfully, and maliciously in violation of the FLSA and warrant the imposition of liquidated and punitive damages.

**WHEREFORE,** Plaintiff, individually and on behalf of those similarly situated, prays for the following:

A. A determination that this action may be maintained as an FLSA collective action;

B. Judgment that Defendant violated the overtime and retaliation provisions of the FLSA;

C. Judgment against Defendant for an amount equal to Plaintiff's and similarly situated individuals' unpaid back wages at the applicable overtime rate;

D. An equal amount to the unpaid back wages as liquidated damages;

E. For an award of damages arising from Plaintiff's loss of past and future income and benefits, and other damages;

F. An award of interest (to the extent liquidated damages are not awarded);

G. Leave to add additional plaintiffs by the filing of written consent forms, or any other method approved by the Court;

H. An award of costs and reasonable attorneys' fees; and

I. Such further relief as the Court deems just and equitable.

Dated: 5/3/2017

*s/Amanda Hilgendorf*
MILLER, HAMPTON & HILGENDORF
Amanda Hilgendorf, LA Bar No. 35492
amanda@mlhlaw.com
Gregory Miller, LA Bar No. 17059
gjm@mlhlaw.com

3690 Government Street
Baton Rouge, LA 70806
Telephone: (225) 343-2205
Fax: (225) 343-2870

NICHOLS KASTER, PLLP
Michele R. Fisher*
fisher@nka.com
Jason D. Friedman*
jfriedman@nka.com
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
*Pro hac vice admission forthcoming*

ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE COLLECTIVE